# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00766-SCT

*MILDRED SCOGGINS*

*v.*

*ELLZEY BEVERAGES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/08/1998 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | LAWRENCE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOE DALE WALKER |
| ATTORNEYS FOR APPELLEE: | STUART ROBINSON, JR. |
| | CHAD RUSSELL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 8/5/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 08/26/1999 | |

**BEFORE PITTMAN, P.J., WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This appeal arises from a dismissal by the Lawrence County Circuit Court of a lawsuit because of the plaintiff's abuse of discovery. Mildred Scoggins sued Ellzey Beverages, Inc., for injuries received in a Piggly Wiggly grocery store in Monticello, Mississippi. Pursuant to Mississippi Rule of Civil Procedure 37, Circuit Judge R. I. Prichard, III, dismissed Scoggins's suit with prejudice because Scoggins failed to report in sworn discovery responses (1) certain medical treatments she received; (2) medications she was prescribed; and (3) injuries she received similar to those complained of in the suit.

¶2. Scoggins appealed the dismissal, listing one assignment of error:

**THE HONORABLE CIRCUIT COURT JUDGE ABUSED HIS DISCRETION WHEN HE DISMISSED THE COMPLAINT OF THE PLAINTIFF WITH PREJUDICE.**

## FACTS OF THE CASE

¶3. Mildred Scoggins was seventy years old when the March, 1994, accident occurred. On January 13, 1997, Scoggins filed a complaint against R & M Foods, Inc., Lee Warren and Ellzey Beverages, Inc, alleging that on March 16, 1994, she was injured in a Piggly Wiggly Grocery Store owned and operated by R & M, when Lee Warren, an employee of Ellzey, hit Scoggins with a loaded dolly causing injuries to her foot, leg and back. R & M and Warren were later dismissed from the lawsuit.

¶4. The facts of this case related to the grocery store accident are not at issue in this appeal. The appeal is based on the trial court's decision to dismiss Scoggins's case with prejudice as a sanction for discovery violations.

¶5. On February 12, 1997, Ellzey submitted interrogatories and requests for production of documents to Scoggins. Some time later, Scoggins submitted her answers. Ellzey deposed Scoggins on October 23, 1997. Scoggins amended her answers to Ellzey's interrogatories on January 12, 1998. As part of her response to Ellzey's interrogatories and requests for production of documents, Scoggins executed an authorization to release medical information which Ellzey used to obtain copies of Scoggins's medical records.

¶6. In interrogatories 16, 17 and 18 submitted February 12, 1997, Ellzey asked Scoggins for information related to her medical history. Scoggins was asked about the injuries sustained as a result of the Piggly Wiggly accident, prior injuries to the areas she claimed were injured in the accident, and the times she had been treated by a physician for injuries in the past. Scoggins responded to Ellzey's interrogatories by stating, "I have never sustained an injury to the portions of my body I claim were injured in the accident, except that in 1958, I was playing softball and received a pinched nerve in my back. I had surgery on the pinched nerve. . . . I completely recovered from the surgery on my back in about six months." Scoggins listed only two instances when she received treatment before the accident at Piggly Wiggly: (1) a 1948 hysterectomy and (2) the 1958 pinched nerve described above.

¶7. Ellzey deposed Scoggins on October 23, 1997. During this deposition, Ellzey asked Scoggins many questions about whether she had ever suffered injuries to her back, arms, legs or hips before the accident on March 16, 1994. Scoggins repeatedly stated she had no problems before the accident. Scoggins said that before the accident on March 16, 1994, she was treated for a kidney stone at St. Dominic Hospital, but otherwise she was in good health.

¶8. Medical records obtained by Ellzey from Scoggins's personal physician, Dr. Pace, after the October 23, 1997, deposition, showed Scoggins had been examined and/or treated for pain, numbness and/or arthritis in her left leg, back, hip and/or spine on thirty-five separate visits from October 5, 1976, through January 21, 1994. These records showed that before the March 16, 1994, accident, Scoggins suffered from widespread arthritis in her knees, hips, lower back, shoulder, neck and elbows. The records also showed Scoggins was prescribed Xanax on June 17, 1993, and was treated with Xanax through January 21, 1994. During her January 21, 1994, visit to Dr. Pace, less than three months before the accident on March 4, 1994, Scoggins complained of pain in "the left shoulder" and "tenderness, back pain and stiffness

in the spine."

¶9. Other records obtained by Ellzey included a surgery consent form signed by Scoggins before a lumbar omnipaque myelogram was performed by Dr. Bowlus on March 19, 1991. Before admission to St. Dominic Hospital for this procedure, Scoggins complained of lower back and leg pain and pain in her back, hip and left leg all the way to her left great toe.

¶10. Ellzey filed a Miss. R. Civ. P. 37 motion to dismiss on January 20, 1998, arguing Scoggins committed perjury and committed a fraud upon the court by giving false statements regarding her prior back ailments and other medical problems and her taking of the prescription drug Xanax. Specifically, Ellzey charged Scoggins perjured herself by: (1) failing to name all the physicians who treated her before the accident; (2) failing to list all the aliments from which she suffered before the accident; (3) denying she was prescribed Xanax before the accident; and (4) failing to mention the lumbar omnipaque myelogram performed on March 18, 1991.

¶11. Scoggins responded to Ellzey's motion by denying she committed perjury, but stating that she listed all medical treatments and conditions she remembered. Scoggins stated she was seventy-four years old at the time her deposition was taken and her husband and sister both died shortly after the March, 1994, accident. Scoggins response was essentially, "I am an old woman who has been through a lot. I did the best I could to remember everything."

¶12. In response to Ellzey's motion, the trial court issued an order setting an evidentiary hearing for March 9, 1998, to give Scoggins an opportunity to respond to Ellzey's charge. It is clear from the record at this stage in the proceedings the trial court recognized the severity of a possible dismissal and attempted to give Scoggins every opportunity to rebut Ellzey's charge.

¶13. At the evidentiary hearing Scoggins testified that she was nervous and upset at her deposition, but did the best she could to answer Ellzey's interrogatories and deposition questions. Scoggins said when Ellzey's attorney asked her about prior medical problems, she either did not remember visiting a doctor or did not think her prior medical problems were important. Ellzey's attorney questioned Scoggins about her thirty-five visits to Dr. Pace and the myelogram. Ellzey's attorney also questioned Scoggins about a balloon-catheterization procedure in her left leg. Scoggins said she did not think those procedures were important because they did not pertain to her accident.

¶14. After the evidentiary hearing, the trial court granted Ellzey's motion to dismiss by order of April 13, 1998. After reviewing Scoggins's testimony in the evidentiary hearing, her answers to interrogatories, her medical records and her deposition testimony, the trial court found Scoggins's explanation for the discrepancies in the various records and testimony was not credible. In all of her responses to interrogatories and in her deposition, Scoggins denied having suffered any physical difficulties related to her back, hip or legs other than the 1958 softball injury. She also denied any incidents of arthritis or degenerative disc disease. She further stated she began taking Xanax only after the grocery store accident. Scoggins also stated she had never been treated for lower back problems, other than in 1958. In its final order of dismissal, the trial court pointed out how these assertions simply did not correspond to Scoggins's medical records. The lower court found that Dr. Pace's medical records

show[ed] innumerable visits by Ms. Scoggins over a fourteen year period from 1976 to 1991. In many

of these visits, the complaints listed deal with pain or debilities of the lower back, hips and legs. These same documents also indicate that Ms. Scoggins suffered from degenerative disc disease, herniated cervical discs and widespread arthritis in her knees, hips, lower back, neck and shoulder. Finally the documents indicate Ms. Scoggins began taking Xanax by prescription in June 1993, more than eight months prior to the subject accident.

* * * *

Ms. Scoggins professes to have never been treated for lower back problems, other than in 1958. Yet, she entered St. Dominic's Hospital on March 18, 1991 complaining of pain in the lower back and left leg.

* * * *

Ms. Scoggins signed a surgery consent form to undergo a lumbar omnipaque myelogram. This procedure is an invasive exploratory technique designed to investigate the causes of lower back pain. It is unusually painful and involves the insertion of a needle into the patient's spine, through which a dye is injected. Nevertheless, Ms. Scoggins did not mention any such procedure in her discovery responses or her deposition.

¶15. The trial court did not accept Scoggins's explanation of the discrepancies. The court found Scoggins's attempts to attribute her memory loss to effects of the death of her husband and sister shortly after the accident and to TIA, transient ischemic attack,[1] to be not credible. The lower court found that even though all these factors taken together could possibly have influenced Scoggins's memory to some degree, "the Court is hardly a medical authority and cannot be expected to make such a diagnosis. Additionally, both parties were admonished to bring to the hearing and all witnesses they felt necessary to bolster their respective positions." Scoggins did not call Dr. Pace nor any another doctor to discuss her memory loss, and as a result there was no competent medical testimony before the court to support her theory of memory impairment.

¶16. The trial court noted that during her deposition and at the hearing, Scoggins "could recall specific incidents, dates, chronologies and places as far back as 1958 and as recently as a few months ago. She could name all of her relatives, and specifically recalled the events of both the hunting season prior to the accident and the accident itself." The lower court went on to state, "The only thing she was *not* apparently able to recall were the visits to Dr. Pace and Dr. Bowlus which went unreported to the Defendant. Such highly selective memory loss, especially when it is unsupported by any medical opinion of genuineness, is simply not credible." (Emphasis in original.)

¶17. In dismissing the case, the trial court recognized "it should impose the least severe sanction available that will accomplish the purpose for which the sanction is imposed." However, the court could find no other sanction that would accomplish the purpose for which a sanction would be imposed. Liability for the accident was not in dispute. The only issue at trial would be a determination of damages. By failing or

refusing to disclose prior medical problems relevant to the question of damages, Scoggins caused Ellzey "major inconvenience in time, attorney fees and general frustration." The trial court further found:

> More importantly, however, she impeded the orderly administration of the judicial system and subverted the very reason for implementation of the discovery rules. . . . The Defendant inquired in good faith several times whether Ms. Scoggins had any prior medical conditions that might bear on the question of the extent of her damages. Each time her answer under oath was in effect, 'No, nothing.'

¶18. In determining that dismissal was the only appropriate sanction for Scoggins's actions, the trial court found:

> Thus, this is not a case in which a mere fine, payment of attorney fees or limitation of recovery will compensate for the harm done. If the Court were to limit Ms. Scoggins to recovery only for injuries "clearly related" to the subject accident, there would remain the factual question for the jury of how much of her condition is attributable to her prior ailments, and how much is explained by the accident. In other words, the case would remain in precisely the same posture as if this motion were never brought.

> If, on the other hand, the Court were to impose upon Ms. Scoggins the necessity of paying the Defendant's attorney fees incurred in pursuing this portion of the case, several problems would arise. First, assuming the case went to trial and Ms. Scoggins lost, the Defendant would, no doubt, be compelled to sue her to recover its fees since she plainly is in no position to pay such fees without a substantial judgment in her favor. Even if she won, however, and the fees were ordered to be deducted from the award, this court considers that substantial justice would not have been done. The Court arrives at this conclusion based on the damages Ms. Scoggins's conduct inflicted on the orderly progress of the case.

> At this point in the case, discovery has been concluded for some time. The case is set for trial on April 29, 1998. If the Court were to allow the case to proceed to trial, it would undoubtedly do so only after allowing the Defendant additional time to re-depose at least Drs. Pace and Bowlus, which would necessitate both a continuance and further expense to the Defendant to re-take depositions which have already been completed. Moreover, because Ms. Scoggins has undergone several procedures and additional therapy, including doctor visits, since the accident and subsequent filing of the suit, it is likely to now be an impossible task to separate the costs attributable to her prior condition from those attributable to the accident.

> All these considerations aside, however, the Court finds that perhaps the most compelling reason for granting the Defendant's motion is to redress an apparently deliberate attempt to subvert the judicial process. Having observed Ms. Scoggins's testimony as a witness and having examined the record - including her deposition and discovery responses - in great detail, and having given her the benefit of

every reasonable doubt, the court is of the opinion that Ms. Scoggins has presented no credible explanation for the total lack of congruence between her testimony and her medical records. "A trial is a proceeding designed to be a search for the truth." *Sims v. ANR Freight Systems, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). When a party attempts to thwart such a search, the courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit. For these reasons set out above, this Court finds that dismissal with prejudice is the only penalty that will accomplish that purpose on the facts as presented.

¶19. Based on these findings, the trial court dismissed the suit with prejudice. Scoggins timely appealed.

## DISCUSSION OF LAW
### Standard of Review

¶20. "Trial courts have considerable discretion in discovery matters and decisions will not be overturned unless there is an abuse of discretion." *Robert v. Colson*, 729 So. 2d 1243, 1245 (Miss. 1999) (*citing Dawkins v. Redd Pest Control Co.*, 607 So. 2d 1232, 1235 (Miss. 1992)).

### Assignment of Error

**THE HONORABLE CIRCUIT COURT JUDGE ABUSED HIS DISCRETION WHEN HE DISMISSED THE COMPLAINT OF THE PLAINTIFF WITH PREJUDICE.**

¶21. Although Scoggins raises only one issue on appeal, this issue is best dealt with in two parts:

**A. The trial court's findings.**

¶22. Scoggins argues the trial court abused its discretion by dismissing her suit rather than imposing some lesser sanction. In making this argument, Scoggins relies on the arguments made at the evidentiary hearing concerning her memory loss and general mental condition after the accident and the deaths of her sister and husband. This portion of her argument is essentially an argument the trial court erred in finding the evidence supported Ellzey's claim that Scoggins gave false answers and the trial court erred in finding her testimony to be not credible.

¶23. In an evidentiary hearing, when a trial judge is sitting as a finder of fact, the judge has the sole authority for determining the credibility of witnesses. *Atterberry v. State*, 667 So. 2d 622, 625 (Miss. 1995); *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994). "Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong." *Yarbrough*, 645 So. 2d at 869 (*quoting Tricon Metals & Servs., Inc. v. Topp*, 516 So. 2d 236, 238 (Miss. 1987)).

¶24. As discussed above Scoggins's testimony regarding her medical history was in direct contradiction to the history described in her medical records. As the trial court pointed out, Scoggins could recall the details

of other aspects of her life as far back as 1958 and as recent as a few months before the hearing. The only instances she could not remember were her many visits to Dr. Pace and Dr. Bowlus. Most persuasive is Scoggins's contention she could not remember a lumbar omnipaque myelogram performed in 1991. This is an invasive and painful procedure, and it is difficult to believe Scoggins either forgot or did not consider this procedure important. Based upon our review of the evidence presented to the judge at the evidentiary hearing, we cannot say the trial court's findings were manifestly wrong. In fact, substantial evidence supports the trial court's finding that Scoggins's testimony was not credible.

¶25. Because the trial court's findings were not manifestly wrong, we find this portion of Scoggins's argument has no merit.

## B. The trial court's imposition of dismissal as a sanction.

¶26. Having decided the trial court was correct in finding Scoggins's conduct warranted some sanction, we now turn to the question of the appropriateness of the trial court's sanction. Scoggins argues the trial court's decision to impose "the death penalty" of dismissal with prejudice as a sanction for her discovery violations was an abuse of discretion. This Court recently addressed the question of when dismissal is an appropriate sanction for a discovery violation by stating:

> We have repeatedly held dismissal is to be used as a sanction only as a last resort. "'Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony. . . . The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures.'" *Caracci* [*v. International Paper Co.*], 699 So. 2d [546,] 556 [(Miss. 1997)] (*quoting* **Clark v. Mississippi Power Co.**, 372 So. 2d 1077, 1078 (Miss. 1979)).

*Robert v. Colson*, 729 So. 2d 1243, 1247-48 (Miss. 1999).

¶27. In appropriate circumstances under Rule 37(b)(2)(C) of the Mississippi Rules of Civil Procedure, trial courts may impose sanctions by "dismissing the action or proceeding or any part thereof." Miss. R. Civ. P. 37(b)(2)(C). Such dismissals by the trial court are reviewed under an abuse of discretion standard. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right legal standard, then this Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (*quoting* **Cooper v. State Farm Fire & Cas. Co.**, 568 So. 2d 687, 692 (Miss. 1990)).

¶28. In *Pierce*, this Court affirmed the trial court's imposition of dismissal as a discovery sanction under Rule 37(b)(2) & (e) and the court's inherent power to protect the integrity of the judicial process where the plaintiff willfully concealed the fact that another person was present when she was injured. *Pierce*, 688 So. 2d at 1387. The plaintiff in *Pierce* submitted false responses to various discovery requests and swore to false testimony in depositions. *Id.* at 1390. Pierce admitted her misconduct only after she discovered the

defendant uncovered the truth. *Id.*

¶29. In *Pierce*, this Court adopted the position of the United States Court of Appeals for the Fifth Circuit in *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511 (5th Cir. 1985), for evaluating the appropriateness of dismissal as a sanction:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Pierce*, 688 So. 2d at 1389 (*quoting Batson*, 765 F.2d at 514 (citations omitted)).

¶30. Applying the facts of the case *sub judice* and the trial court's findings to the requirements listed in *Pierce*, we find the trial court did not abuse its discretion in dismissing Scoggins's suit with prejudice:

> "*. . . dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply.*"

¶31. The trial court's findings that Scoggins's failure to comply with Ellzey's discovery requests was willful and that Scoggins's attempts to explain her misconduct were not credible were supported by substantial evidence in the record.

> "*Dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions.*"

¶32. The trial court addressed the necessity of imposing dismissal as a sanction because no other sanction would achieve the deterrent value of dismissal. The trial court also described the possible effects of other, less drastic, sanctions, and it concluded no other sanction was appropriate.

> "*Another consideration is whether the other party's preparation for trial was substantially prejudiced.*"

¶33. Although in *Pierce* we stated there is no requirement that the defendant be substantially prejudiced by the absence of evidence in order for a sanction based on the plaintiff's discovery violation to be warranted, *Pierce*, 688 So. 2d at 1391, the trial court did consider the prejudicial effects of Scoggins's actions. As discussed above, Ellzey was put through "major inconvenience in time, attorney fees and general frustration."

The trial court further stated any sanction other than dismissal would cause the Ellzey further time and expense that might never be recovered.

> "*Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, . . .*"

¶34. The trial court specifically found there was no evidence to suggest Scoggins's attorney was responsible for any neglect.

> "*. . . or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.*"

¶35. The trial court found Scoggins's claim of confusion and memory loss was not supported by credible evidence because the only things she failed to recall were relevant portions of her medical history.

¶36. Dismissal with prejudice is a sanction that should be imposed only in those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice. In the case *sub judice*, all evidence before us points to one conclusion, Mildred Scoggins wilfully submitted false answers to interrogatories and knowingly did not answer deposition questions truthfully. For these reasons, we find the trial court's dismissal of her suit against Ellzey Beverages, Inc. with prejudice was not an abuse of discretion.

## CONCLUSION

¶37. The trial court's dismissal of Scoggins's case with prejudice was not an abuse of discretion. Therefore, we affirm the judgment of the Lawrence County Circuit Court.

¶38. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR.**

1. A "TIA" is a brief cerebrovascular incident that is rapid in onset and variable in duration. It usually lasts between two and fifteen minutes but no longer than twenty-four hours.