949 So.2d 784 (2006)
Roy GILBERT, Appellant
v.
Martha Jean IRELAND, Appellee.
No. 2004-CA-02340-COA.
Court of Appeals of Mississippi.
August 29, 2006.
Rehearing Denied November 28, 2006.
*786 Susan Neelley O'Neal, Andrew N. Alexander, Greenville, attorneys for appellant.
James H. Walker, Cleveland, attorney for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. This personal injury action is before the Court for a second time. In 2000, the Court reversed and remanded a one million dollar judgment on an evidentiary issue. Gilbert v. Ireland, 758 So.2d 1050 (Miss.Ct.App.2000). On October 29, 2003, in the Circuit Court of Bolivar County, a jury returned a verdict in favor of Martha Ireland for three million dollars on a theory of post-traumatic stress stemming from a minor automobile accident, which even Ireland's witness, Dr. Rodrigo Galvez, termed "a fender-bender." There were no issues going to property damage. Rather, the judgment was based on a theory of post-traumatic stress syndrome. The defendant, Roy Gilbert, appeals, asserting five issues, which we quote verbatim:
I. THE TRIAL COURT ERRED IN DENYING GILBERT'S MOTION TO DISMISS AND RENEWED MOTION TO DISMISS WHERE THE EVIDENCE SHOWED, AND THE TRIAL COURT ACTUALLY FOUND, THAT THE PLAINTIFF, MARTHA JEAN IRELAND, LIED REPEATEDLY, BOTH UNDER OATH AND TO HER TREATING PHYSICIANS, ABOUT HER MEDICAL AND PSYCHOLOGICAL CONDITION, THE SOLE ISSUE REMAINING IN THIS LAWSUIT.
II. THE TRIAL COURT ERRED IN DENYING GILBERT'S MOTION TO EXCLUDE THE EVIDENCE OF IRELAND'S EXPERT, DR. RODRIGO GALVEZ, WHERE DR. GALVEZ'S TESTIMONY WAS BASED ON IRELAND'S FALSE STATEMENTS TO HIM, WAS NOT OTHERWISE SUPPORTED BY SUFFICIENT FACTS AND DATA, AND THUS DID NOT COMPLY WITH THE REQUIREMENTS OF M.R.E. 702 AND DAUBERT V. MERRILL DOW PHARMACEUTICALS, INC., 509 U.S. 579 (1993).
III. THE TRIAL COURT ERRED IN DENYING GILBERT'S MOTION FOR DIRECTED VERDICT, AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT, WHERE IRELAND'S PROOF AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW, CONSISTING ONLY OF HER OWN TESTIMONY AND THE TESTIMONY OF EXPERTS WHOSE ONLY RELEVANT OPINIONS WERE ADMITTEDLY BASED ON IRELAND'S FALSE STATEMENTS ABOUT HER CONDITION.
IV. WHERE IT WAS ESSENTIAL TO GILBERT'S DEFENSE TO EXPOSE MS. IRELAND'S PREVIOUS FALSE TESTIMONY ABOUT HER DAMAGES, AND THAT FALSE TESTIMONY CONCERNED SENSITIVE SEXUAL MATTERS, THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL THE OPPORTUNITY TO QUESTION POTENTIAL JURORS IN VOIR DIRE ABOUT THEIR REACTION TO DISCUSSION OF SUCH SEXUAL MATTERS, AND IN DENYING DEFENSE COUNSEL THE ABILITY TO ADDRESS THE SUBSTANCE OF HER FALSE TESTIMONY IN HIS OPENING STATEMENT TO THE JURY.
V. WHERE THE UNDISPUTED EVIDENCE PROVED THAT THE CAR ACCIDENT BETWEEN GILBERT AND IRELAND WAS A MINOR "FENDER-BENDER." AND THAT IRELAND HAD INCURRED ONLY $10,253.52 OVER TEN YEARS IN MEDICAL COSTS OSTENSIBLY RELATED TO THE ACCIDENT, *787 THE THREE MILLION DOLLAR JURY VERDICT WAS GROSSLY EXCESSIVE, AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WAS THE PRODUCT OF BIAS, PREJUDICE AND IMPROPER PASSION.
¶ 2. Finding that the first three issues mandate reversing and rendering this action, the fourth and fifth will not be addressed.

FACTS AND PROCEDURAL HISTORY
¶ 3. On May 23, 1993, Ireland was driving northbound on Highway 1 south of Benoit, Mississippi. Gilbert was traveling along the same highway behind Ireland. Proceeding along the same path, in between Ireland and Gilbert's vehicles, was a third vehicle driven by Lawrence Smith. Gilbert moved into the lane for southbound traffic and commenced passing Smith. As Gilbert moved past Smith's vehicle, Ireland executed a left turn into a private driveway that abutted the highway. As Ireland executed this turn, Gilbert struck her car near the driver's side door.
¶ 4. Ireland was transported to the Bolivar County Hospital in Cleveland, Mississippi where she was treated and released, but she returned the next day complaining of back pain. She was treated by Dr. Arthur Lindsey, a general practitioner in Cleveland. Dr. Lindsey admitted Ireland to Bolivar County Hospital for treatment and physical therapy for approximately one week. Dr. Lindsey died prior to the trial. In this Court's first opinion, we addressed the sole issue of whether the circuit court erred in admitting a letter written by Dr. Lindsey. We found that the letter should not have been admitted and reversed and remanded. 758 So.2d at 1054(¶ 13). This issue is not presented in the current appeal.
¶ 5. Following our reversal and remand, this cause was again tried on August 21, 2001, but a mistrial was declared after it was disclosed that Ireland had been untruthful in both her testimony, as well as her statements to her expert witness going to her medical history and psychological condition. Ireland testified that she "developed nervousness problems, depression, stress. I lost my interest in men because I lost my sex drive and had no interest in them, and I also lost my memory. I couldn't remember things, therefore I couldn't pass my State [Nursing] Board tests." In fact, Ireland had been treated for sexually transmitted diseases forty-one times, and had received prescriptions for birth control pills in each year from 1995 to 2001. Moreover, she had been pregnant twice, delivering a still-born infant in 1996, and having a miscarriage one month prior to the first trial. Medical records indicated that Ireland reported in a gynecological examination that she had sexual relations on the very day upon which she testified as to her loss of "sex drive" in the first trial. Subsequently, the circuit court granted Gilbert's motion for a mistrial. Ireland does not dispute that Gilbert sought this medical information in discovery. The circuit court found that the discovery violations were not attributable to Ireland's counsel, but instead stemmed from information she declined to share with him, as well as counsel for Gilbert.
¶ 6. Ireland testified and told Dr. Galvez that she was socially isolated, and her academic performance was impaired by post-traumatic stress stemming from the automobile accident. However, in fact, her grades were better after the accident than before. Moreover, during the third trial, Gilbert introduced evidence showing Ireland had visited the Lighthouse Point Casinos eighty-nine times since 1998, including a visit nine days prior to trial.
¶ 7. Gilbert filed a motion to dismiss the action and for attorney's fees as a sanction *788 pursuant to Mississippi Rule of Appellate Procedure 37(b)(2). The circuit court declined to dismiss the claim, but ruled that Ireland could not pursue the loss of sex drive claim, nor could she pursue issues of academic performance or not passing a test to be a Licensed Practical Nurse. Gilbert sought an interlocutory appeal to the supreme court, which denied the appeal.
¶ 8. The case was brought on for trial yet a third time on October 27, 2003. Dr. Donald Cook, an orthopaedic surgeon, testified he diagnosed a soft tissue injury in Ireland's back. He had not treated Ireland prior to the injury, but despite having nothing on which to base Ireland's condition prior to the accident beyond Ireland's statements as to her pre-accident medical condition, he stated she had a permanent medical impairment to the body of seven percent as a result of the accident. Dr. Galvez testified that Ireland suffered from post-traumatic stress disorder and had a sixty percent permanent impairment. Dr. C. Greg Cates, a rehabilitative counselor, testified that based on Dr. Galvez's and Dr. Cook's findings, Ireland was one hundred percent vocationally impaired. He admitted, however, that without Dr. Galvez's diagnosis he could not have made his finding of vocational impairment. Dr. Lewis Smith, a professor of economics at the University of Mississippi, testified Ireland's lost wages and benefits totaled $690,905.79. Smith had never met personally with Ireland. Ireland again testified that she was socially isolated and lacked friends.

ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE MOTIONS TO DISMISS
¶ 9. The standard of review as to whether an action should have been dismissed as a sanction for discovery violations is abuse of discretion. Scoggins v. Ellzey Beverages, 743 So.2d 990(¶ 27) (Miss.1999). An appellate court will affirm a trial court's decision about dismissal as a sanction unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1388 (Miss.1997) (quoting Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 692 (Miss.1990)). The supreme court set forth the analysis as to whether dismissal is the appropriate sanction as:
First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in [a] situation where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.
Pierce, 688 So.2d at 1389 (quoting Batson v. Neal Spelce Assocs., 765 F.2d 511, 514 (5th Cir.1985)).
¶ 10. In this case, not only do all of these factors weigh in favor of dismissal, but also the fact of the matter is that the circuit court imposed no sanctions whatsoever. The court found that Ireland could no longer pursue the claims under which, as her own counsel concedes, she gave untruthful testimony and failed to comply *789 with discovery. The circuit court merely ruled she could not give false testimony a third time. Thus, she was only deprived of something she had no legal right to pursue in the first place. In this case, the "sanctions" simply put Ireland where she would have been had she not been untruthful. This was an inadequate sanction as a matter of law. "Courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit." Scoggins, 743 So.2d at 994 (¶ 18). Without sanctions that extract a penalty, litigants actually have an incentive to bring false claims. We find the circuit court erred in not applying sanctions. While it might be argued that the circuit court had discretion to be lenient, the "sanctions" that the circuit court imposed were inadequate to undo the damage Ireland's untruthfulness inflicted upon Gilbert's ability to prepare for trial and to defend the claim against him. In argument concerning Gilbert's pretrial motion to dismiss, prior to the interlocutory appeal, Gilbert's counsel stated:
By Mr. Alexander: It's hardly fair to let Galvez assume, for his opinion that she's lost her sex drive.
By the Court: Sex drive is out of the question.
By Mr. Alexander: But his opinion includes it. It makes up part of the basis for this conclusion he has that she's got this 60% mental impairment or whatever he calls it. . . . .
By Mr. Alexander: Let me get this straight because I want this real clear on the record. For seven years, eight years, plaintiff has been telling her physicians, giving the history that includes a number of things, several of which apparently are now out of the case, and the experts, including Dr. Galvez, Dr. Cates, Dr. Cook, history including this alleged sexual dysfunction, school problems. It's now plain that she was, she was lying about that. But that's the history. Now, is it, first let me ask a question because I need to know exactly where we are. Is it the plaintiff's position that Dr. Galvez and the rest of the doctors are still going to be allowed to rely on the history, the false history that she gave them?
By the Court: Okay. Well the Court rules 
By Mr. Walker: I don't know of any false history.
By the Court: The Court rules that if defense counsel wants to re-depose under the facts and circumstances, defense counsel, well, the defendant has that right.
¶ 11. Dr. Galvez relied upon Ireland's misleading information in reaching his expert opinion. Any remedy for the false testimony and discovery violations that did not exclude his expert testimony could not remedy Ireland's untruthful recitation of her symptoms and history. The supreme court has cautioned against disallowing expert testimony as a sanction where a lesser sanction can remove any prejudice or litigation cost that a party's discovery violation has caused. Caracci v. Int'l Paper Co., 699 So.2d 546(¶ 30) (Miss.1997). However, in this case, the same information that Ireland failed to disclose, her purported lack of sex drive and her inability to engage in social interaction, was the basis for Dr. Galvez's diagnosis of post-traumatic stress syndrome. As the untruths were the basis for his expert opinion, it was illogical, and an abuse of discretion, for the circuit court to refuse to disallow Galvez's opinion from the false evidence.
¶ 12. Dr. Galvez testified that Ireland's misstatements of facts were not intentional untruths, but rather manifestations of the post-traumatic stress syndrome which he *790 diagnosed. Therefore, it could be argued that dismissal as a sanction is unduly harsh. However, as discussed in the rest of this opinion, while the logical course Dr. Galvez traveled in giving his testimony a third time was at best circular, even if it were credible, he had no factual basis for concluding when this psychological condition began or what caused it.
II. WHETHER THE CIRCUIT ERRED IN DENYING GILBERT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GALVEZ
III. WHETHER THE CIRCUIT COURT ERRED IN DENYING GILBERT'S MOTIONS FOR A DIRECTED VERDICT OR IN THE ALTERNATIVE A JNOV
¶ 13. Gilbert's second and third assignments of error both address the same issue, so they will be addressed together. The issue is the evidentiary basis, and value, of Dr. Galvez's expert opinion. The supreme court acknowledged the Daubert[1] standard for the admissibility of expert testimony under Mississippi Rule of Evidence 702 in Mississippi Transp. Comm'n v. McLemore, 863 So.2d 31(¶ 23) (Miss.2003). In that case, the Supreme Court found that, prior to allowing expert testimony into evidence, trial courts must first assess: (1) that the expert testimony is relevant and will assist the trier of fact; (2) the opinion is reliable in that it is based upon sufficient data and founded upon reliable principles and methods; and (3) the proposed witness has applied the principles and methods reliably to the case.
¶ 14. The standard of review for a denial of a JNOV and a denial of a directed verdict are the same. Under this standard, an appellate court must:
consider the evidence in the light most favorable to the[non-moving party], giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the [moving party] that reasonable [jurors] could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. 3M Co. v. Johnson, 895 So.2d 151, 160 (Miss.2005) (quoting Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992)).
Owens v. Mississippi Farm Bureau Casualty Insurance Co., 910 So.2d 1065, 1073 (¶ 29) (Miss.2005).
¶ 15. Prior to the third trial, Gilbert deposed Dr. Galvez a second time. During this deposition, Dr. Galvez first became aware of the misstatements. Yet, he did not change his diagnosis. Rather, he opined that the misstatements were part of the post-traumatic stress disorder. Dr. Galvez testified that Ireland's misstatements of fact were "denial," which was an aspect of her suffering from post-traumatic stress syndrome. Gilbert voir dired him concerning Ireland's lack of sexual interest.
Q: She wasn't completely honest with you, was she?
A: No. That, that is a typical example of what we call denial in post-traumatic stress disorder. The people go through that post-traumatic stress order [sic], they deny themselves the freedom of taking, and even if they get in, like this particular case, even sick. They deny *791 that. They put it away from their mind. It's not that they are lying to us. It's simply they use a, what we call, an ego defense.
¶ 16. However, according to medical records of the healthcare facility where Ireland sought medical treatment for sexually transmitted diseases, during the same time period that she was telling Dr. Galvez she had no interest in sex, she was able to remember when she had had sexual relations, and with whom she had had them. Therefore, Dr. Galvez's opinion was at odds with the facts introduced at trial. The opinion was not "based upon sufficient facts or data." M.R.E. 702. Therefore, the circuit court erred in admitting Dr. Galvez's testimony into evidence.
¶ 17. Moreover, even assuming arguendo that the testimony was admissible, Dr. Galvez admitted that he had nothing on which to base his judgment of Ireland's psychological condition before the automobile accident, other than her recitations to him. He testified that Ireland wanted to do better than she was capable of doing academically after the accident, even though her grades after the accident improved from the grades prior to the accident.
Q: [D]o you think before the accident her grades [before the accident] were as good as she wanted them to be?
A: She told me after the accident her performance was not as good as she wanted [it] to be. I didn't ask her if before the accident her performance was as good as she wanted [it] to be. We were talking after the accident.
¶ 18. Dr. Galvez testified that the basis for his opinion concerning Ireland's pre-accident psychological condition, was the medical history that he obtained from talking with her.
Q: A history is what the patient tells you right?
A: Yes, sir.
Q: And it's important to be able to believe what the patient tells you, right?
A: I don't exactly believe 100% of what they tell me. I take information at face value and I take it from this.
Q: I'm sorry. The last thing you said.
A: I keep alert. If the patient tells me things, I listen to them, and I, but I don't exactly say it's a hundred percent fits [sic] with reality or is not consistent with reality. I, it's an observation that I make to how the patient perceives his or her life, Okay. . . . It's how the patient perceives his life.
¶ 19. Dr. Galvez's diagnosis of post-traumatic stress syndrome was totally based upon his observation of how Ireland "perceived" her life and social interactions. The only information he had concerning Ireland's psychological condition prior to the accident was what she told him, and he testified that he did not expect her to be factually accurate. His opinion simply had no probative value as to Ireland's pre-accident condition.
¶ 20. The record is devoid of any medical testimony or documents that could shed light on whether before the accident Ireland had a psychological condition blurring fantasy with reality. The only witness for Ireland who did not depend upon Dr. Galvez's diagnosis to show some injury or loss was Dr. Cook. He testified that Ireland had a slight loss of mobility in her back, but like Dr. Galvez, his medical history of Ireland consisted solely of her verbal representations to him. Consequently, the record fails to contain any information that could tend to show Ireland suffered any psychological injury stemming from the accident, aside from her verbal representations, which even her expert witness stated were not factually accurate. Therefore, the circuit court erred in denying *792 Gilbert's motion for directed verdict or JNOV.
¶ 21. In conclusion, the circuit court erred in failing to exclude Dr. Galvez's testimony as both a sanction under Mississippi Rule of Civil Procedure 37, as well as under Mississippi Rule of Evidence 702. And, the circuit court erred in not granting a directed verdict or JNOV. Ireland failed to produce any evidence showing any psychological injury. The testimony of all the expert witnesses has been tainted by Ireland's repeated lies and therefore their testimony was inaccurate. The only appropriate sanctions for these actions was dismissal of the suit against Gilbert. Consequently, we reverse and render.
¶ 22. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, P.J., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION AND IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
KING, C.J., Dissenting:
¶ 23. Because I believe that the majority has improperly found that the circuit court should have dismissed this case as a matter of law, I dissent.
¶ 24. The majority correctly recognizes that the circuit court's dismissal or refusal to dismiss an action is subject to review under an abuse of discretion standard. After recognizing this, the majority fails to apply the abuse of discretion standard, and proceeds to say this is a matter of law and sanctions were mandatory. See paragraph 10 of the majority opinion, which states,
In this case, not only do all of these factors weight in favor of dismissal, but also the fact of the matter is that the circuit court imposed no sanctions whatsoever. The court found that Ireland could no longer pursue the claims under which, as her own counsel concedes, she gave untruthful testimony and failed to comply with discovery. The circuit court merely ruled she could not give false testimony a third time. Thus, she was only deprived of something she had no legal right to pursue in the first place. In this case, the "sanctions" simply put Ireland where she would have been had she not been untruthful. This was an inadequate sanction as a matter of law. "Courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit." Scoggins, 743 So.2d at 994(¶ 18).
¶ 25. I would suggest that the discretion to impose sanctions carries with it the discretion to refrain from imposing sanctions. The mere fact that this Court might have resolved the issue in a different manner, if it were the initial court, does not make the trial court wrong, nor does it axiomatically mean that the trial court abused its discretion.
¶ 26. The opinion appears to suggest that the foundation for declaring the circuit court's actions to be inadequate as a matter of law is paragraph 18 of Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990 (Miss.1999). Paragraph 18 is taken from that section of the opinion styled "STATEMENT OF THE CASE". A careful reading of Scoggins indicates that the quoted language is not from the supreme court discussion of the issues, but is taken from its recitation of the facts at the trial level.
¶ 27. Paragraph 18 of Scoggins reads,:

*793 In determining that dismissal was the only appropriate sanction for Scoggin's actions, the trial court found:
Thus, this is not a case in which a mere fine, payment of attorney fees or limitation of recovery will compensate for the harm done. If the Court were to limit Ms. Scoggins to recovery only for injuries "clearly related" to the subject accident, there would remain the factual question for the jury of how much of her condition is attributable to her prior ailments, and how much is explained by the accident. In other words, the case would remain in precisely the same posture as if this motion were never brought.
If, on the other hand, the Court were to impose upon Ms. Scoggins the necessity of paying the Defendant's attorney fees incurred in pursuing this portion of the case, several problems would arise. First, assuming the case went to trial and Ms. Scoggins lost, the Defendant would, no doubt, be compelled to sue her to recover its fees since she plainly is in no position to pay such fees without a substantial judgment in her favor. Even if she won, however, and the fees were ordered to be deducted from the award, this court, considers that substantial justice would not have been done. The Court arrives at this conclusion based on the damages Ms. Scoggins's conduct inflicted on the orderly progress of the case.
At this point in the case, discovery has been concluded for some time. The case is set for trial on April 29, 1998. If the Court were to allow the case to proceed to trial, it would undoubtedly do so only after allowing the Defendant additional time to re-depose at least Drs. Pace and Bowlus, which would necessitate both a continuance and further expense to the Defendant to re-take depositions which have already been completed. Moreover, because Ms. Scoggins has undergone several procedures and additional therapy, including doctor visits, since the accident and subsequent filing of the suit, it is likely to now be an impossible task to separate the costs attributable to her prior condition from those attributable to the accident.
All of these consideration aside, however, the Court finds that perhaps the most compelling reason for granting the Defendant's motion is to redress an apparently deliberate attempt to subvert the judicial process. Having observed Ms. Scoggins's testimony as a witness and having examined the record-including her deposition and discovery responses-in great detail, and having given her the benefit of every reasonable doubt, the court is of the opinion that Ms. Scoggins has presented no credible explanation for the total lack of congruence between her testimony and her medical records. "A trial is a proceeding designed to be a search for the truth." Sims v. ANR Freight System, Inc., 77 F.3d 846, 849 (5th Cir.1996). When a party attempts to thwart such a search, the courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit. For these reasons set out above, this Court finds that dismissal with prejudice is the only penalty that will accomplish that purpose on the facts as presented.
¶ 28. Because I believe that the majority opinion fails to apply the proper standard of review, and incorrectly relies upon the statements of the trial court in the Scoggins case as legal authority for its actions in this case, I dissent and would affirm.
NOTES
[1] 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).