ISHEE, J.,
for the Court:
¶ 1. This appeal arises from a September 20, 2010 order of the Circuit Court of Tunica County, granting Boyd Gaming Corporation d/b/a Sam’s Town Casino’s (Boyd) motion to dismiss due to discovery violations by Frankie Conklin. Conklin brings two issues for our review: (1) whether the trial court erred in finding Conklin knowingly provided false statements during discovery, thereby committing a fraud upon the trial court, and prejudiced Boyd’s ability to defend the action and (2) whether the trial court erred by dismissing the action instead of imposing a less harsh sanction, if necessary. We find *591 the trial court did not abuse its discretion in dismissing the complaint. We affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
¶ 2. On December 10, 2005, Conklin visited Sam’s Town Casino in Tunica County, Mississippi. He had attended a coaches’ meeting at the hotel and casino. Following the meeting, as Conklin walked toward the front of the casino atrium, he slipped on an accumulation of water and fell. According to the accident report, Conklin hit his knee and the back of his head, but he had pain only in his knee. He had a small cut on his knee with slight swelling. A casino employee was dispatched to aid Conklin. The employee bandaged Conk-lin’s knee, wrapped the injury with an Ace bandage, and applied a cold pack. Conklin then went to the Tunica Regional Clinic to receive follow-up treatment; he then returned to the hotel for the rest of the night.
¶ 3. On or about December 20, 2005, Conklin sought additional treatment at St. Francis Hospital when his ankle began to abscess, which he described as swollen with puss around it. He was admitted to the hospital and received intravenous (IV) antibiotics. Conklin was then discharged and given an oral antibiotic. On or about January 8, 2006, Conklin was re-admitted to St. Francis due to ongoing pain in his right leg. Dr. Margarita Lamothe examined Conklin and determined he had developed an abscess, which required a surgical incision and drainage. Conklin was then placed on continuous suppressive antibiotic therapy for the treatment of cellulitis.
¶ 4. On December 9, 2008, Conklin filed a complaint in the trial court alleging negligence against Boyd for injuries he had sustained during the fall. On January 20, 2009, Boyd filed an answer and affirmative defenses to Conklin’s complaint. Discovery then took place. On June 16, 2010, Conklin filed a motion to amend the complaint seeking leave of court to more properly plead the allegations of his injuries and his requests for damages. On July 8, 2010, Boyd filed a motion to dismiss pursuant to Mississippi Rule of Civil ProceL dure 37 and alleged Conklin had committed perjury and fraud during discovery by knowingly and intentionally giving false statements regarding his prior medical condition of cellulitis.
¶ 5. During the course of discovery, Boyd found that Conklin had been diagnosed and treated previously for cellulitis. It was discovered that on or about August 9, 2005, Conklin sought treatment at St. Francis for pain and swelling in his lower right leg. The notes from his physical exam indicate a clinical impression (diagnosis) of cellulitis. He was also given a venous-doppler exam, which found “vari-cosities, otherwise normal right lower extremity venous[-]doppler study.” Conklin was released from the hospital and prescribed an antibiotic to treat the cellulitis. He failed to disclose his hospital visit or diagnosis during discovery.
¶ 6. Following a hearing on the motion to dismiss, the trial court found that Conk-lin had failed to disclose relevant information regarding previous treatment of the leg at issue, and this omission prejudiced Boyd during its trial preparation. Based on those reasons, the trial court dismissed Conklin’s complaint with prejudice.
¶ 7. Conklin now appeals claiming the trial court erred by (1) finding he knowingly provided false statements during discovery, thereby committing a fraud upon the trial court, and prejudiced Boyd’s ability to defend the action and (2) dismissing the action due to discovery violations instead of imposing a less harsh sanction, if necessary.
*592 STANDARD OF REVIEW
¶ 8. This Court reviews a dismissal of a complaint by the trial court under an abuse of discretion standard. Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1388 (Miss.1997) (citing White v. White, 509 So.2d 205, 207 (Miss.1987)). The decision to impose sanctions for discovery violations is within the trial court’s discretion. Id. Nevertheless, the trial court should only dismiss a cause of action because of discovery violations under the most extreme circumstances. Id. (citation omitted). The appellate court looks to the following four factors adopted by the Mississippi Supreme Court to determine if the dismissal of a complaint is the appropriate remedy for discovery violations:
First, dismissal is authorized only when the failure to comply with the court’s order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party’s preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.
Id. (quoting Batson v. Neal Spelce Asscs., 765 F.2d 511, 514 (5th Cir.1985)). We will affirm the trial court’s decision “unless there is a ‘definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.’ ” Id. (quoting Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 692 (Miss.1990)).
DISCUSSION
I. Trial Court’s Findings
¶ 9. Conklin argues the trial court erred by finding he knowingly provided false statements during discovery, thereby committing a fraud upon the trial court, and prejudiced Boyd’s ability to defend the action. Conklin claims: (1) his conduct was not intentional or willful, but rather that he did not know what the term “cellu-litis” meant and simply confused the term with “cellulite”; (2) he did not provide information about his August 2005 leg problems because he did not consider the symptoms similar to those resulting from the December 2005 fall; (3) he did not withhold any requested document because he produced all responsive documents and records in his possession and in his counsel’s possession, and he signed numerous medical releases; (4) his answers during his deposition were a result of confusion regarding the questions being asked; and (5) there is no evidence his actions prejudiced Boyd’s defense during trial preparation.
¶ 10. We will begin our analysis by looking at Conklin’s course of conduct during discovery. He had several opportunities during discovery to disclose his August 2005 leg problem, but he never did. His first opportunity was in his response to interrogatories. The relevant interrogatories are as follows:
INTERROGATORY NO. 15. Identify each body part you claim was injured in this accident and describe the nature of the injuries.
RESPONSE: Plaintiff seriously injured his right leg, including numerous abscesses (cellulitis), as a direct result of the negligence of Defendant. Plaintiff was required to undergo surgery to treat the injury to his right leg and has suffered greatly as a result of this injury.
*593 INTERROGATORY NO. 16. Regarding only the body parts you are claiming in this suit were injured, please identify and describe in detail any and all physical injuries, ailments, problems[,] and conditions of any nature whatsoever which you had during the five[-]year period preceding the date of the subject fall.
RESPONSE: Plaintiff has received treatment for high blood pressure and diabetes during the fíve[-]year period preceding the date of the subject fall to the present.
Conklin had a second opportunity to disclose his prior leg problems in his response to Boyd’s request for production of documents. The relevant request is as follows:
REQUEST NO. Up. All medical records, reports, summaries[,] or like documents which in any manner relate to any physical, mental[,] or emotional problems you had concerning the same body part or injuries before and/or after the date of the subject fall, as identified in your response to Interrogatory No. 15, and treatment received for those conditions.
RESPONSE: Plaintiff has no documents responsive to this request.
Finally, Conklin had the opportunity to admit his prior leg problems during his deposition, which he again failed to do. The following are examples of misstatements made throughout his deposition:
Q. In Interrogatory Number 16, we asked[:] “Regarding only the body parts you are claiming in this suit that were injured, please identify and describe in detail any and all physical injuries, ailments, problems and conditions of any nature whatsoever which you had during the five[-] year period preceding the date of the subject fall.” Do you understand the question?
A. Yes.
Q. Your response is[:] “The plaintiff had received treatment for high blood pressure and diabetes during the five[-]year period preceding the date of the subject fall to the present.” That was your answer, if you want to look at it. I just want to verify that.
A. Okay.
Q. All right. And that’s still the case?
A. Yes.
[[Image here]]
Q. So, other than the left ankle, the migraines, the kidney stones, the gallbladder, the high blood pressure, [and] the diabetes, have you ever sought medical treatment and gone to the ER, the doctor[,] or the hospital for any other type of injuries or ailments—
A. No.
Q. —prior to the accident?
A. No.
[[Image here]]
Q. So your knee and your ankle were beginning to abscess is the term you used and [the abscess contained puss]?
A. Yes.
Q. Did it hurt?
A. Yes.
Q. And you went to the doctor?
A. Yes.
Q. Had you ever exhibited those types of symptoms before?
A. No.
[[Image here]]
Q. Did you have any prior problems with your leg prior to the accident?
A. No.
¶ 11. The evidence shows a continuous course of conduct, in which Conklin re *594 peatedly provided false answers regarding prior problems with his leg. We will address each of Conklin’s arguments relating to the false statements, looking only for an abuse of discretion by the trial judge.
¶ 12. Conklin argues on appeal, and he argued at the trial court hearing, that his conduct was not intentional or willful, but rather he did not know what the term “cellulitis” meant and simply confused the term with “cellulite.” He further argues he was never diagnosed with cellulitis during his initial injury and was never told about the condition by healthcare providers. There is ample evidence to show that Conklin was, in fact, diagnosed with celluli-tis in August 2005. The notes from his physical exam on August 9, 2005, show a clinical impression (diagnosis) of cellulitis. The discharge instructions from the hospital visit also show a diagnosis of cellulitis and a prescription of antibiotics for the treatment of that condition. Conklin signed directly below those instructions. Additionally, in Dr. Kashif Latif s medical records, dated September 22, 2005, celluli-tis was listed under “history of present illness.” Finally, the records from his emergency room visit on December 20, 2005, for the treatment of injuries sustained during the fall also show a history of cellulitis. In the Emergency Physician Record, cellulitis was listed under past history, and the phrase “similar symptoms previously” was circled.
¶ 13. Even if Conklin did not know about cellulitis or what that term meant, he should have disclosed the prior issues with his leg during discovery. Conklin alleges he did not disclose problems with his leg because he believed there was a difference between the symptoms he experienced in August 2005 and those injuries he sustained in December 2005. We find it unusual that Conklin acknowledged his diagnosis of high blood pressure and diabetes, but he failed to mention his prior leg problems because he did not find them sufficiently similar. In an appeal akin to the one at hand, the Mississippi Supreme Court refused to reverse a trial court’s dismissal of the complaint based on the plaintiffs claims that he provided false answers because he forgot about his prior injuries. Allen v. National R.R. Passenger Corp., 934 So.2d 1006 (Miss.2006).
¶ 14. In Allen, the supreme court found the trial court’s Rule 37 dismissal appropriate pursuant to Pierce and Batson. Id. at 1013 (¶ 18). During the course of discovery, the plaintiff repeatedly failed to disclose a prior back injury. Id. at 1010 (¶ 11). On appeal, the plaintiff admitted he failed to disclose his earlier injury, but he alleged it was not willful. Id. at 1009 (¶ 7). Instead, the plaintiff claimed he “innocently forgot about the accident”; therefore, the dismissal was not appropriate. Id. The supreme court determined: “The trial court certainly weighed the relevant factors in reaching its conclusion^] and no evidence exists in the record to support a finding of a clear error of judgment or abuse of [discretion] by the trial court.” Id. at 1013 (¶ 19). Accordingly, the supreme court affirmed the dismissal by the trial court. Id.
¶ 15. Just as the supreme court ruled in Allen, we conclude the trial court did not err in finding Conklin knowingly provided false answers. Conklin was asked multiple times about his medical history and previous problems with his leg. The questions Conklin was asked referenced his leg generally and were not limited to symptoms similar to cellulitis. As the trial court noted: “Even if the Court were inclined to believe that the Plaintiff did not understand that he had been diagnosed and treated for cellulitis, the fact that he failed to disclose any previous issue with the leg in question stretches the bounds of credi *595 bility.” The evidence supports the trial court’s conclusion that Conklin wilfully provided false answers during discovery.
¶ 16. Likewise, Conklin’s arguments fail regarding his response to Boyd’s request for production of documents and his false answers during his deposition. The numerous medical releases he provided do not remedy the fact that he repeatedly provided false answers during discovery. In addition, any possible confusion about certain questions during his deposition does not account for the repeated false answers and omissions throughout discovery. Finally, Conklin provided no evidence to rebut the trial court’s finding and to show his false answers during discovery were not prejudicial to Boyd during trial preparation. Therefore, this argument also fails.
¶ 17. This Court will affirm a trial court’s decision unless the trial court abused its discretion. Here, there is no evidence the trial court abused its discretion in finding that Conklin knowingly provided false statements during discovery, thereby committing a fraud upon the trial court, and prejudiced Boyd’s ability to defend the action. Accordingly, this issue is without merit.
II. Trial Court’s Imposition of Dismissal of Complaint as a Sanction
¶ 18. As previously stated, the Mississippi Supreme Court has adopted the Fifth Circuit’s four-part test to determine whether a trial court has abused its discretion by dismissing with prejudice. Pierce, 688 So.2d at 1389. We will now apply that four-part test.
A. Wilfulness or Bad Faith
¶ 19. As discussed previously, Conklin’s failure to comply with discovery resulted from wilfulness or bad faith. Conklin had multiple opportunities during discovery to disclose his prior diagnosis of cellulitis, but he failed to do so each time. Even if we were to believe he did not know what “cellulitis” meant, he should have disclosed his prior leg problems. Furthermore, his failure to comply with discovery did not result from an inability to comply. Conk-lin knew he had been treated for problems with his leg prior to the accident, but he chose not to admit this during discovery. In addition, he could have easily retrieved his medical records from the hospital visit, just as opposing counsel did.
B. Less Drastic Sanctions
¶ 20. Conklin argues the trial court should have imposed a less harsh sanction, if necessary. When considering dismissal of the complaint, the trial court attempted to impose a less harsh sanction by asking Conklin to reduce his claim to that of mere exacerbation, which he indicated he would not do. Instead, Conklin asserts that any discrepancies from discovery should be addressed during cross-examination for impeachment purposes. However, because this type of cross-examination may always occur when one party makes inconsistent statements, the deterrent value is minimal. Pierce, 688 So.2d at 1390. In addition, case law has repeatedly upheld dismissals due to discovery violations.
¶ 21. In Pierce, the plaintiff sued several defendants after a ceiling fan located above her bed fell onto her, causing her injuries. Id. at 1387. During discovery and at the first trial, the plaintiff maintained she was in the apartment alone when the accident occurred. Id. However, it was later discovered she was not alone when the accident occurred. Id. at 1388. The trial court found her presentation of false testimony warranted a dismissal with prejudice. Id. On appeal, the supreme court stated: “The other sanctions considered by the trial court would not achieve *596 the deterrent value of the dismissal. Since any other sanction beside dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty[J” Id. at 1391. Finding the trial court did not abuse its discretion, the supreme court affirmed the dismissal. Id. at 1392.
¶ 22. In Gilbert v. Ireland, 949 So.2d 784, 789 (¶ 10) (Miss.Ct.App.2006), this Court found the trial court erred by not imposing sanctions. The trial court ruled the plaintiff could no longer pursue the claims in which she gave false testimony and failed to comply with discovery. Id. Therefore, the trial court only prevented her from giving false testimony again. Id. “Courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit.” Id. (quoting Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990, 994 (¶ 18) (Miss.1999)). This Court said: “Without sanctions that extract a penalty, litigants actually have an incentive to bring false claims.” Id. Finding the appropriate sanction for the plaintiffs conduct was dismissal of the action, this Court reversed and rendered. Id. at 792 (¶ 21).
¶ 23. Similar to this Court’s reasoning in Gilbert, the trial court in this case stated: “If the Court were to overlook the Plaintiffs discoveries [sic] violations and allow this case to proceed, the Plaintiff would be in the same place he would have been had the disclosures been timely made.” Because the deterrent value of Rule 37 could not be achieved by a less harsh sanction, dismissal was the appropriate action.
C. Prejudice to Boyd’s Defense During Trial Preparation
¶ 24. The trial court determined Conk-lin’s failure to disclose his prior condition prejudiced Boyd’s defense during trial preparation and completely changed the posture of the litigation. There is no evidence to indicate the trial court erred in finding Conklin’s conduct prejudiced Boyd during trial preparation. Furthermore, prejudice to the defendant during trial preparation is a consideration, not a requirement, in determining whether dismissal is appropriate.
D. Neglect Attributable to Attorney or Grounded in Confusion or Misunderstanding
¶ 25. There is no indication or evidence that the discovery violations are attributable to Conklin’s attorney. In addition, the violations are not grounded in confusion or misunderstanding of the trial court’s orders. Conklin argues he failed to mention his prior leg problems because he did not find them sufficiently similar to the problems arising from his December 2005 injuries. He also argues that he was confused about certain deposition questions. As noted above, Conklin was asked multiple times and in several different variations about any prior leg problems. He had several opportunities to disclose his prior leg problems, but he failed to do so every time. The trial court did not err in finding Conklin’s complete failure to disclose his prior leg problems was not attributable to confusion or misunderstanding.
¶ 26. To reverse the trial court’s decision, this Court must have a “definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.” Pierce, 688 So.2d at 1388 (quoting Cooper, 568 So.2d at 692). We find the trial court weighed the relevant factors, and no evidence exists to find the trial court committed a clear error of judgment in reaching its conclusion. This issue is without merit.
*597 ¶ 27. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.