# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01603-COA

**KEITH BOWDRY, LAKEISHA BOWDRY AND MISSISSIPPI MUNICIPAL WORKERS' COMP GROUP**

**APPELLANTS**

**v.**

**T. MART, INC. D/B/A T. MART CONVENIENCE STORE AND TOMMY BROOKS OIL COMPANY D/B/A TEXACO GAS STATION**

**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/26/2016 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | EDWARD BLACKMON |
| | BRADFORD JEROME BLACKMON |
| | MARCUS AMIR WILLIAMS |
| | SHEA SCOTT |
| ATTORNEYS FOR APPELLEES: | WILLIAM G. ARMISTEAD |
| | JOHN D. BRADY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED: 03/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Lakeisha and Keith Bowdry appeal the circuit court's dismissal of their negligence claims based on discovery violations. This case considers whether the dismissal was appropriate under Mississippi Rule of Civil Procedure 37 and *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385 (Miss. 1997). We find reversible error and remand for further proceedings.

# FACTS

¶2.     On April 15, 2011, Keith was on duty as a Tupelo police officer.  He was pulling out of a Texaco gas station when his vehicle collided with another vehicle traveling on South Gloster Street in Tupelo, Mississippi.  As a result of the accident, Keith was taken to North Mississippi Medical Center where he was treated for complaints of pain in his head, neck, left knee, and lower back.

¶3.     Keith and his wife Lakeisha filed a complaint against T. Mart Inc. and Tommy Brooks Oil Company (collectively "T. Mart"), the owners of the Texaco gas station.  The complaint alleged that the shrubbery on T. Mart's property negligently inhibited the sight line of an exiting vehicle.  Keith sought to recover damages from the accident, and Lakeisha sought damages for loss of consortium.

¶4.     Keith was served with interrogatories related to his prior medical history and treatment.  He was asked whether he ever had been involved in any other accident or incident or if he had any illness or sickness of any kind of any type or severity that required or resulted in him being seen or treated by any medical professional.  In response, Keith disclosed a motor-vehicle accident that occurred on August 25, 2005, in a Tupelo Walmart parking lot.  Keith's response did not provide information as to any injuries that resulted from the accident.  But, the response stated that Keith saw two separate medical providers and a physical therapist following the incident.

¶5.     Keith later was deposed by T. Mart.  Keith was asked whether he ever had experienced prior neck problems, and he responded that he had not.  Keith also was asked

2

about lower-back issues, and he responded—"[n]ot lower back." After the deposition, T. Mart obtained Keith's prior medical records. The records revealed that he had received medical treatment for his neck and lower back after the 2005 accident.

¶6. T. Mart believed Keith's discovery responses were false. T. Mart then filed a motion to dismiss the complaint pursuant to Rule 37(b)(2) and 37(e). After a hearing, the trial court granted the motion to dismiss with prejudice. The trial court concluded that, under the circumstances, no sanction less than dismissal would be appropriate to satisfy the deterrent value of Rule 37. Also, because Lakeisha's claim was derivative in nature, it too was dismissed with prejudice.

## STANDARD OF REVIEW

¶7. "A trial court's dismissal of a cause of action as a sanction for discovery abuse is reviewed for abuse of discretion." *Avare v. Gulfside Casino P'ship*, 178 So. 3d 796, 798 (¶4) (Miss. Ct. App. 2013). "When [an appellate court] reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard." *Pierce,* 688 So. 2d at 1388. "If the trial court applied the right standard, then [the c]ourt considers whether the decision was one of several reasonable ones [that] could have been made." *Id.* Thus, "[a]n appellate court will affirm a trial court's dismissal of a cause of action as a sanction 'unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" *Avare*, 178 So. 3d at 798 (¶4) (quoting *Pierce*, 688 So. 2d at 1388). "We will, however, review issues of law de novo." *Id.*

3

¶8. "We recognize that the exercise of dismissal power should be limited to 'the most extreme circumstances.'" *Id*. (quoting *Gilbert v. Wal-Mart Stores Inc.*, 749 So. 2d 361, 364 (¶6) (Miss. Ct. App. 1999)). We further recognize that "[an appellate c]ourt's duty is to decide not whether it would have dismissed the action as an original matter, but whether the [trial] court abused its discretion in so doing." *Pierce*, 688 So. 2d at 1388-89.

## ANALYSIS

¶9. The question here is whether the circuit court committed reversible error in the decision to dismiss the Bowdrys' complaint under Rule 37 and *Pierce.*

¶10. In *Pierce*, the plaintiff was injured when a ceiling fan in her apartment fell onto her. *Id*. at 1387. During discovery and at trial, she concealed the fact that another person had been present in the room when the ceiling fan fell. *Id*. at 1387-88. On numerous occasions, through extensive discovery, and in response to interrogation at the first trial, she maintained that she had been alone when the accident occurred. *Id*. at 1387. After a new trial was granted for other reasons, it was discovered that she had lied. *Id*. at 1388. The circuit court found that such a blatant lie was a reason to dismiss her case, even though there was no prejudice to the defendants. *Id*.

¶11. The supreme court's analysis in *Pierce* provides us with the framework we must consider in this appeal:

> Pierce contends that the circuit court erred and abused its discretion by imposing the sanction of dismissal with prejudice, thereby barring her from any recovery for injuries caused when the ceiling fan fell on her. Specifically, the appellant argues that the trial court misapplied Mississippi Rule of Civil Procedure 37(b)(2) by imposing the "death penalty" and dismissing her lawsuit.

4

The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude. The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.

*Pierce*, 688 So. 2d at 1388 (internal citations and quotation marks omitted). It is very important to note the supreme court's express word of caution and admonition: "Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery *only under the most extreme circumstances*." *Id.* (emphasis added).

¶12. In his response to interrogatories, Keith provided the following information:

INTERROGATORY NUMBER 9: Before or after the date of the occurrence [that] is the subject of this action, had you ever been involved in any other accident or incident or had any illness or sickness of any kind and of any type or severity [that] required you to be seen or resulted in your being seen or treated by any doctor, hospital[,] or other medical provider? If so, please state in detail the following:

(a) The date and place of the accident, incident, illness[,] or sickness;

(b) A description of the accident, incident, illness[,] or sickness;

(c) Names, addresses[,] and phone numbers of witnesses to the accident, incident, illness[,] or sickness;

(d) The name of the defendant (or person or entity against whom you made your claim), if lawsuit, action[,] or claim was made on your behalf;

(e) The court or other tribunal where any action or claim was filed, together with any identifying action number;

(f) The names, addresses[,] and phone numbers of all medical doctors, any other medical personnel, hospitals, or other medical

5

facilities or medical providers wherein you received treatment as a result of the accident, incident, illness[,] or sickness[] identified above.

RESPONSE: Plaintiff, Keith Bowdry was involved in an automobile accident in 2005 on the Wal-Mart parking lot in Tupelo, Mississippi, when [his] vehicle was struck by a vehicle being driven the wrong way by an employee of Lencare Medical Supply. [Keith] does not recall the name of the driver. [Keith] was seen by a doctor at Semmes Murphy Neurologic and Spine Institute[,] . . . Debra Hill, NP, and Reenea Willis, PT, of Rehab Solutions, PLLC. No lawsuit was filed[;] however, [Keith] was compensated for damages by the insurance company for Lencare Medical Supply.

INTERROGATORY NUMBER 10: Please identify the names, addresses[,] and phone numbers of your regular family doctor and the names, addresses[,] and phone numbers of any other medical doctors or any other medical personnel not previously listed, who have treated you or given you any medical advice for the past ten years.

RESPONSE: Dr. Norris Crump - 898 Lynden Blvd., Tupelo, MS 38801[;] and Debra Hill, NP - Plantersville Clinic, 2489 Main St., Plantersville, MS 38862[.]

¶13.   In his deposition, Keith responded to the following questions about his prior neck or

lower-back issues:

Q:      Before this accident, had you ever had any prior problems with your neck?

A:      No, sir.

Q:      [Had] you ever had to have any medical treatment for your neck before the accident?

A:      When I was a kid, I had a cyst on the back of my neck . . . . I was like, maybe, 12 or 13, something like that. That's the only problem I had.

Q:      Did you ever have any prior problems with headaches before the accident?

A:      No, sir.

6

Q:     What about your lower back?

A:     Not lower back.

¶14.   T. Mart obtained Keith's medical records. The records included the following information about Keith's medical care for injuries he received in the accident:

1.     On April 4, 2005, Keith was treated at Plantersville Clinic for low back pain that had started a few days prior. The Plantersville Clinic record shows that Keith had "low back pain, started Saturday."

2.     In August 2005, Keith was involved in an automobile accident and was treated at North Mississippi Medical Center. His chief complaint was characterized as "MVA THIS A.M. C/O LOW BACK PAIN[;] UNRESTRAINED DRIVER."

3.     On August 31, 2005, Keith was at Plantersville Clinic due to continued pain from the accident. The record shows that Keith "had MVA last Thursday, hurts from neck all the way down back" and "leg weakness and burning sense [after] MVA – hurting at night in back and legs."

4.     The injury was severe enough to necessitate MRIs of the lumbar spine, thoracic spine[,] and cervical spine. On each of the MRI reports, the indication was "neck and back pain." The MRI of the cervical spine showed "mild reversal of the normal lordotic curvature of the cervical spine" and "mild disc osteophyte complex mainly at the C3-C4 and C4-C5 levels but borderline to mild spinal stenosis as described."

5.     Also, Keith was at North Mississippi Medical Center on September 10, 2005, due to "neck and back problems, wreck 8/25/05."

6.     Further, in October 2005, Keith was at Plantersville Clinic due to "L shoulder pain – hurts to raise arm, low back pain, neck pain, needs excuse for light duty[,]" and, "burns down into buttock. Lumbar back." He was diagnosed with shoulder strain and lumbar strain.

7.     Five days later, Keith was a patient at Semmes Murphey Neurologic & Spine Institute. He complained of "left shoulder, neck[,] and back pain, without radicular symptomatology" and "severe pain in his back." A physical examination was performed[,] which showed "cervical range of motion is limited on forward flexion, hyperextension[,] and lateral

7

bending[.] He also has some myofascial trigger points in the lumbar area with a restricted range of motion in the lumbar spine on forward flexion and hypertension." He was diagnosed with "cervical and lumbar spasms," and physical therapy was prescribed due to "cerv/LB pain."

8.    He returned to Semmes Murphey Clinic in November 2005 due to "lumbar myofascial pain" as well as shoulder pain. Keith was again noted to have "cervical myofascial spasms" and "lumbar myofascial spasms." He was prescribed "aggressive physical therapy for myofascial release of the cervical and lumbar areas[.]"

¶15.   From this evidence, the trial judge granted the motion to dismiss and ruled:

A comparison of Keith Bowdry's answers to interrogatories and deposition testimony with his pre-accident medical records show that he intentionally and deceitfully misrepresented his pre-existing medical condition with respect to his neck and back. Mississippi's appellate courts have consistently found this type of concealment of facts to be willful and in bad faith.

¶16.   This Court must review the trial court's decision under an abuse of discretion standard. *Pierce*, 688 So. 2d at 1388. This requires that we may only reverse when there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id.*

¶17.   In *Kinzie v. Belk Department Stores L.P.*, 164 So. 3d 974, 977-80 (¶¶6-13) (Miss. 2015) (internal citations and quotations omitted), the supreme court ruled:

In *Pierce,* this Court held that dismissal was appropriate because the plaintiff had flat-out lied under oath about the existence of an eyewitness to the incident that had caused the plaintiff's alleged injuries and had consistently obstructed the progress of the litigation by filing admittedly false responses to various discovery requests and by swearing to false testimony in depositions. This Court determined that dismissal was appropriate because the plaintiff had acted in bad faith, and that any sanction other than dismissal would virtually allow the plaintiff to get away with lying under oath . . . . The Court noted, however, that it would remain very reluctant to affirm such a harsh sanction, and did so in that case only because it provided the *paradigm* situation in

8

which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony.

In other cases in which this Court has affirmed dismissal, the discovery violations were similarly egregious. In *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990 (Miss. 1999), the plaintiff, who could perfectly recall the details of several aspects of her life for many years, completely failed to disclose several invasive medical procedures and doctors' visits that were relevant to her claim. The trial court in that case found that the plaintiff made an apparently deliberate attempt to subvert the judicial process, and she presented no credible explanation for the total lack of congruence between her testimony and her medical records. This Court affirmed, again noting that this case presented a rare instance where the conduct of a party is so egregious that no other sanction will meet the demands of justice.

More recently, in *Ashmore v. Mississippi Authority on Educational Television*, 148 So. 3d 977, 985 (Miss. 2014), we affirmed a dismissal where the plaintiff had lied by concealing a right-knee surgery and degenerative joint disease in his right knee. The plaintiff also had hidden the existence of a subsequent left-knee injury or degenerative disc disease in his back, despite medical reports to the contrary. Once again, the discovery violations that justified dismissal were clear and unequivocal falsehoods.

However, where the discovery violation at issue is less extreme and open to potential truthful interpretations, this Court will not hesitate to reverse a trial court's Rule 37 dismissal. In *Wood ex rel. Wood v. Biloxi Public School District*, 757 So. 2d 190, 193 (Miss. 2000), the plaintiff responded to an interrogatory regarding the nature of his injuries by stating, "I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful." After viewing undercover surveillance video of the plaintiff walking normally, squatting, twisting, bending, and generally performing normal daily functions without any indication of impairment or pain, the trial court dismissed the plaintiff's case. This Court reversed, finding that the only discovery response which was contradicted by evidence at the hearing on the motion to dismiss was one ambiguously worded response to one interrogatory question." As the plaintiff's response indicated that he could still perform certain tasks, just with less enjoyment than before, the Court held that the defendants did not establish that the plaintiff knowingly made false statements in discovery and it was certainly not established that the plaintiff had engaged in a pattern of such false responses. The Court held that the alleged untruthfulness in Wood's interrogatories, if any, d[id] not constitute a sufficiently egregious discovery violation such that no other sanction will meet

9

the demands of justice.

We find the discovery violation in this case to be more similar to the alleged discovery violation in *Wood* than the unequivocally false and misleading discovery violations found in *Pierce*, *Scoggins*, and *Ashmore*. In *Wood*, the plaintiff stated that he could no longer enjoy certain activities as he could before being injured. Here, Kinzie stated that he could not perform several activities as he could before his injury. He was truthful when it came to his medical record and his medically diagnosed work restrictions. Kinzie indisputably was injured. He went to an emergency room immediately after his accident and, at that time, was diagnosed with central-disc protrusion, disc desiccation, and disc bulging. He underwent an invasive surgical procedure on his spine. The activity observed in the undercover video did not stray outside of his medical work restrictions, and it did not encompass any of the specific activities that he stated he no longer could perform. The trial court found this to be a discovery violation. While the trial court cannot be said to have been manifestly wrong in its determination that there was, in fact, a discovery violation, the severe sanction of dismissal amounts to clear, reversible error amounting to an abuse of discretion.

Kinzie did not blatantly lie about the existence of a witness, as did the plaintiff in *Pierce*, nor did he completely misrepresent years of medical history and procedures, as did the plaintiff in *Scoggins*, nor did he hide any other surgeries, as did the plaintiff in *Ashmore*. The Court finds no "total lack of congruence" between Kinzie's responses and his medical records, as the trial court found in *Scoggins*. Nor do we find this to be the paradigm situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony as this Court found in *Pierce*. Instead, and similar to the plaintiff in *Wood*, Kinzie answered an interrogatory about the extent of his injuries in a way that the trial court thought was misleading. And here, although the trial court found Kinzie's response to be false, the perceived falsehood arose in an isolated incident, and it certainly has not been established that Kinzie's statements in discovery indicate any kind of pattern of misleading or false responses.

Analogously, this Court has reversed a trial court's dismissal based on Rule of Civil Procedure 41(b) where the trial court failed to consider lesser sanctions, including fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings. Just as this Court found then, in this case, it is not at all certain that lesser sanctions would have been futile in expediting the proceedings. Although we do not find, as did the Court of Appeals, that the

10

trial court abused its discretion when it determined that Kinzie had committed a discovery violation, we hold that the trial court erred when it dismissed the case completely as a result of that violation while paying mere lip service to the possibility and practicality of lesser sanctions.

Dismissal is appropriate only under the most extreme circumstances and only where lesser sanctions will not suffice. This is not an extreme case, and lesser sanctions can deter misleading responses without dismissing Kinzie's claims altogether. A jury will watch this video, and that may influence its ultimate determination. But a jury ought to make that ultimate determination, not the trial judge. The discovery violation at issue is not sufficiently extreme to justify a full and final dismissal of the case. We therefore affirm that portion of the judgment of the Court of Appeals which held that dismissal with prejudice was not warranted. We reverse the Court of Appeals' finding that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation. We reverse the judgment of the Circuit Court of the First Judicial District of Hinds County dismissing the case with prejudice, and we remand the case for trial.

¶18. The supreme court's analysis in *Kinzie* applies here. Dismissal was simply not a reasonable sanction. T. Mart argues that Keith made intentional and deceitful misrepresentations. However, we find no evidence to support the conclusion that Keith intentionally misled or blatantly lied when he testified that he had not suffered prior neck and lower-back problems. Unlike in *Pierce*, Keith's interrogatory responses and the reasonably expected discovery efforts of the defendants led to the medical records that may contradict Keith's deposition testimony. Certainly, these medical records may be offered to attack Keith's credibility at trial and to accurately present evidence of his prior medical history and condition. However, under these circumstances, a lesser sanction of attorney's fees and costs associated with obtaining the medical records would be an appropriate sanction. Dismissal is certainly not.

¶19. The judicial administration of civil claims is governed by the Mississippi Rules of

11

Civil Procedure. These Rules provide the mechanism for bringing civil claims, to obtain discovery, and to attain a resolution. Mississippi Rule of Civil Procedure 1 provides that "[t]hese rules govern procedure in the circuit courts . . . in all suits of a civil nature . . . . These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." Here, we must construe how the trial court applied Rule 37. Appellate courts often recognize that a litigant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials."[1] Likewise, there are no perfect trials in civil cases.

¶20. Yet, the dissent seeks perfection in discovery. At trial, T. Mart will have the ability to cross-examine and impeach Keith about his deposition testimony versus his medical records. The jury will then be able to assess his credibility and reach a fair verdict based on the evidence.

¶21. The facts of this case simply do not rise to the level of deception or concealment in *Pierce* or *Eaton v. Frisby*, as argued by the dissent. Instead, this is similar, if not identical, to this Court's recent decision in *Westfall v. Goggins*, 2016-CA-00727-COA, 2017 WL 4511138, at *7-8 (¶¶21-22) (Miss. Ct. App. Oct. 10, 2017). In *Westfall*, we noted that anytime a defendant asks for dismissal of the action for a discovery violation, the trial judge and this Court must begin with the important admonition in *Pierce*—dismissal is appropriate "only under the most extreme circumstances" and only where lesser sanctions will not suffice. *Id.* at *7 (¶21) (quoting *Pierce*, 688 So.2d at 1388-89). Just like *Westfall*, this is

---

[1] *Conners v. State*, 92 So. 3d 676, 688 (¶33) (Miss. 2012) (quoting *Brown v. United States*, 411 U.S. 223, 231-32 (1973)); *see also Bruton v. United States*, 391 U.S. 123, 135 (1968).

simply not an extreme case that requires dismissal.

¶22. Therefore, we find a definite and firm conviction that the circuit judge committed a clear error of judgment in the dismissal of this action. We reverse the circuit court's judgment and remand this case for further proceedings consistent with this opinion.

¶23. **REVERSED AND REMANDED.**

**LEE, C.J., IRVING, P.J., FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING:**

¶24. I respectfully dissent from the majority's opinion finding that the circuit court reversibly erred in dismissing Keith's negligence claims based on discovery violations. Since I find no error in the circuit court's dismissal, I would affirm.

¶25. Keith and his wife Lakeisha filed suit against T. Mart for injuries Keith claimed to have sustained as the result of a motor vehicle accident that occurred as he was exiting a Texaco station. Keith alleged that shrubbery on T. Mart's property negligently inhibited his view when exiting the gas station. Lakeisha filed a claim for loss of consortium—a derivative claim stemming from Keith's injuries.

¶26. During the course of pretrial discovery, T. Mart served Keith with interrogatories related to his prior medical history and treatment. Specifically, the interrogatories asked whether Keith ever had been involved in any other accident or incident, or had any illness or sickness of any kind and of any type or severity, which required or resulted in him being seen or treated by any medical professional. Keith responded with information regarding a

13

2005 accident in a Tupelo Wal-Mart parking lot. However, he failed to provide any information as to any injuries that resulted from the accident. Keith did state that he saw two separate medical providers following the incident.

¶27. T. Mart later deposed Keith and further questioned him regarding his medical history. When asked whether he ever had experienced prior neck problems, Keith responded that he had not. When asked whether he ever had experienced prior lower back issues, Keith responded, "Not lower back."

¶28. Following Keith's deposition, T. Mart obtained Keith's prior medical records, which revealed that Keith indeed had received extensive medical treatment for his neck and lower back in 2005.[2] In response, T. Mart filed a motion to dismiss Keith's complaint pursuant to Mississippi Rule of Civil Procedure 37(b)(2) and 37(e), claiming that Keith provided "willful, false deposition testimony and grossly evasive, misleading discovery responses." Following a hearing, the circuit court granted the motion to dismiss with prejudice, concluding that under the circumstances, no sanction less than dismissal would be appropriate to satisfy the deterrent value of Rule 37. Because Lakeisha's claim was derivative in nature, it was dismissed with prejudice as well.

¶29. We review a trial court's dismissal of a cause of action as a sanction for discovery-abuse for abuse of discretion. *Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 981 (¶9) (Miss. 2014); *see also Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990, 996 (¶27)

---

[2] There were eight medical records the circuit court found relevant, ranging a period of eighteen months, wherein Keith complained of neck and back problems. Each record will be discussed in further detail below.

14

(Miss. 1999). The Mississippi Supreme Court "has long held that our trial courts have the discretion to impose sanctions for discovery violations [that] result from willful neglect [or] willful disobedience or cause undue advantage and surprise." *Eaton Corp. v. Frisby*, 133 So. 3d 735, 748 (¶49) (Miss. 2013). However, the supreme court also has cautioned that a "trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Ashmore*, 148 So. 3d at 981 (¶9).

¶30. "When [an appellate court] reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard." *Id.* (citing *Pierce v. Heritage Props. Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997)). "If the trial court applied the right standard, then [the c]ourt considers whether the decision was one of several reasonable ones which could have been made." *Id*. We will affirm a trial court's dismissal as a sanction for a discovery violation "unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon weighing [the] relevant factors." *Avare v. Gulfside Casino P'ship*, 178 So. 3d 796, 798 (¶4) (Miss. Ct. App. 2013); *see also Eaton Corp.*, 133 So. 3d at 747 (¶45). Upon appellate review of a trial court's dismissal of a cause of action for failure to comply with discovery, this Court should engage in "measured restraint" and "should not decide whether it would have dismissed the original action but whether dismissal amounted to clear error." *Kinzie v. Belk Dep't Stores L.P.*, 164 So. 3d 974, 977 (¶4) (Miss. 2015). "We will, however, review issues of law de novo." *Avare*, 178 So. 3d at 798 (¶4).

¶31. Keith argues that the circuit court erred in finding that he wilfully misrepresented his

15

medical history during discovery. As stated, Keith's medical records reflect that he received injuries to his neck, lower back, and shoulder as the result of a car accident in 2005. However, during Keith's deposition, T. Mart's counsel asked Keith whether he had any prior problems with his neck and lower back. Keith denied ever suffering any lower back problems, and he mentioned only the removal of a cyst from the back of his neck when he was in eighth grade.

¶32. At the hearing before the circuit court, Keith denied that he provided false testimony. In support of his argument, Keith asserted that he had not signed some of the prior medical records. He also claimed that the medical records were not "author[ed]" or authenticated and that the records did not conclusively establish that Keith specifically had complained of prior lower back pain. The circuit court found these arguments without merit.

¶33. On appeal, however, Keith now argues that he did not lie about the injuries stemming from the 2005 car accident; rather, Keith asserts that he "merely forgot" that he suffered neck and lower back pain. Keith maintains that the 2005 accident occurred seven years before he was deposed, and his biggest complaint from the accident was his shoulder—not his neck or lower back.

¶34. I find this argument wholly unpersuasive and without merit. That is because "[i]t is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal." *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) (quoting *Adams v. Bd. of Sup'rs of Union Cty.*, 177 Miss. 403, 414, 170 So. 684, 685 (1936)). "The rule is that a trial judge cannot be put in error on a

16

matter which was never presented to him for decision." *Id*. A review of the record reveals that Keith never presented this argument to the circuit court—therefore, I decline to address the merits of it in this separate opinion. *See id.*

¶35. Keith argues that the circuit court abused its discretion in dismissing his case with prejudice because lesser sanctions would have served the deterrent purpose of Rule 37. I disagree. Rule 37(b)(2)(C) provides:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
>> an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the action or proceeding or any part thereof*, or rendering a judgment by default against the disobedient party[.]

(Emphasis added). Rule 37(e) further provides that "[i]In addition to the application of those sanctions, specified in Rule 26(d) [of the Mississippi Rules of Civil Procedure] and other provisions of this rule, *the court may impose upon any party or counsel such sanctions as may be just*[.]" (Emphasis added).

¶36. Building on Rule 37, I further acknowledge that the supreme court has established the following factors for evaluating the appropriateness of dismissal as a sanction for discovery violations:

> [(1)] First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. [(2)] Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. [(3)] Another consideration is whether the other party's preparation for trial was substantially prejudiced. [(4)] Finally, dismissal may be inappropriate

17

when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Pierce*, 688 So. 2d at 1389; *see also* M.R.C.P. 37(b)(2)(C). "The *Pierce* court explained that these factors are considerations and not four absolute requirements." *Avare*, 178 So. 3d at 799 (¶8) (citing *Pierce*, 688 So. 2d at 1389). "The supreme court has further held that willfulness or bad faith may be so clearly evidenced that the four *Pierce* factors will be irrelevant to the upholding of dismissal." *Id*. Furthermore, "[a] finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence[,] or a gross indifference to discovery obligations." *Pierce*, 688 So. 2d at 1390.

¶37. In its order dismissing Keith's suit with prejudice, the circuit court herein weighed each of the *Pierce* factors and ultimately concluded that each factor weighed in favor of dismissal. In applying the *Pierce* factors, the circuit court also set forth Keith's misrepresentations in detail. I now turn to review the circuit court's application of the *Pierce* factors.

¶38. As to the first factor, the circuit court stated:

A comparison of [Keith's] answers to interrogatories and deposition testimony with his pre-accident medical records show that he intentionally and deceitfully misrepresented his pre-existing medical condition with respect to his neck and back . . . . A consideration of the facts presented herein . . . demonstrates that [Keith]'s misrepresentation regarding his pre-existing medical condition was willful and in bad faith.

The record clearly supports the circuit court's findings as to this factor. Regarding his prior medical history, Keith was specifically asked the following through T. Mart's interrogatories:

**INTERROGATORY NUMBER 9**: Before or after the date of the

18

occurrence which is the subject of this action, had you ever been involved in any other accident or incident or had any illness or sickness of any kind and of any type or severity, which required you to be seen or resulted in your being seen or treated by any doctor, hospital[,] or other medical provider? If so, please state in detail the following:

   (a)   The date and place of the accident, incident, illness[,] or sickness;

   (b)   A description of the accident, incident, illness[,] or sickness;

   (c)   Names, addresses and phone numbers of witnesses to the accident, incident, illness[,] or sickness;

   (d)   The name of the defendant (or person or entity against whom you made your claim), if lawsuit, action[,] or claim was made on your behalf;

   (e)   The court or other tribunal where any action or claim was filed, together with any identifying action number;

   (f)   The names, addresses[,] and phone numbers of all medical doctors, any other medical personnel, hospitals, or other medical facilities or medical providers wherein you received treatment as a result of the accident, incident, illness[,] or sickness[] identified above.

   **RESPONSE TO INTERROGATORY NUMBER 9**: [Keith] was involved in an automobile accident in 2005 on the Wal-Mart parking lot in Tupelo, Mississippi, when [Keith's] vehicle was struck by a vehicle being driven the wrong way by an employee of Lencare Medical Supply. [Keith] does not recall the name of the driver. [Keith] was seen by a doctor at Semmes Murphy Neurologic and Spine Institute . . . ; Debra Hill, NP, and Reenea Willis, PT, of Rehab Solutions, PLLC. No lawsuit was filed, however, [Keith] was compensated for damages by the insurance company for Lencare Medical Supply.

   **INTERROGATORY NUMBER 10**: Please identify the names, addresses and phone numbers of your regular family doctor and the names, addresses and phone numbers of any other medical doctors or any other medical personnel not previously listed, who have treated you or given you any

19

medical advice for the past ten years.

> **RESPONSE TO INTERROGATORY NUMBER 10**:  Dr. Norris Crump—898 Lynden Blvd., Tupelo, MS 38801[;] and Debra Hill, NP—Plantersville Clinic, 2489 Main St., Plantersville, MS 38862[.]

¶39.   Keith's subsequent deposition-testimony addressed the medical records reflecting that Keith injured his neck, lower back, and shoulder as the result of a car accident in 2005. During Keith's deposition, T. Mart's counsel asked Keith whether he suffered any problems with his neck, head, or lower back prior to the accident at issue.  Keith denied ever suffering any lower back problems or headaches before the accident, and he mentioned only the removal of a cyst from the back of his neck when he was in eighth grade.

¶40.   Following the information provided by Keith in his sworn answers to interrogatories and deposition testimony, T. Mart obtained Keith's prior medical records, which reflected a vast medical history.  T. Mart included Keith's medical records in its motion to dismiss and attached the records for the circuit court to review.  The circuit court accordingly dismissed Keith's complaint after finding that he had misrepresented his prior medical history.

¶41.   A review of Keith's medical records herein reflects that Keith indeed suffered from neck and low back pain beginning in April 2005, six years before the accident at issue in this case.  These medical records reveal the following relevant treatment sought by Keith in response to suffering from neck and low back pain:

> **April 4, 2005**—Keith received treatment at the Plantersville Clinic for *low back pain* that started two days earlier.
>
> **August 25, 2005**—Keith was involved in an automobile accident and received treatment at North Mississippi Medical Center.  The record from North Mississippi Medical Center reflects that Keith's chief complaint was "*LOW*

*BACK PAIN.*"

**August 31, 2005**—Keith returned to the Plantersville Clinic for treatment due to continued pain from the accident. The records states that Keith complained that he "*hurts from neck all the way down back[,] has burning pain*" and had suffered "leg weakness and burning since [the motor vehicle accident]—*hurting at night in back and legs*."

**September 9, 2005**—Keith received MRIs of the lumbar spine, thoracic spine, and cervical spine. On each of the MRI reports, the indication was "*neck and back pain*." The MRI of the cervical spine showed "mild reversal of the normal lordotic curvature of the cervical spine" and "mild disc osteophyte complex mainly at the C3-C4 and C4-C5 levels but borderline to mild spinal stenosis as described."

**September 10, 2005**—Keith received treatment at North Mississippi Medical Center due to "*neck and back problems*" from the August 2005 wreck.

**October 14, 2005**—Keith received treatment at the Plantersville Clinic due to "[left] shoulder pain." The record shows that Keith complained that it hurt to "raise [his] arm" and he suffered from "*low back pain, neck pain*" that "burns down into [his] buttock." The record reflects that Keith stated that physical therapy "does not help" and that he was not taking any medicine. Keith was then diagnosed with "shoulder strain and *lumbar strain*."

**October 19, 2005**—Keith received treatment at Semmes Murphey Neurologic & Spine Institute. There, Keith complained of "left shoulder, *neck and back pain*, without radicular symptomatology." Keith also complained of "*severe pain in his back*" when he had to stand for prolonged periods. A doctor performed a physical examination which showed "cervical range of motion is limited on forward flexion, hyperextension[,] and lateral bending. . . . [Keith] has some *myofascial trigger points in the lumbar area with a restricted range of motion in the lumbar spine* on forward flexion and hypertension." Keith was diagnosed with "*cervical and lumbar spasms*" and "left rotator cuff strain." The doctor prescribed physical therapy due to "cerv/LB pain" and "rotator cuff pain."

**November 11, 2005**—Keith returned to Semmes Murphey Clinic due to "*lumbar myofascial pain*" as well as shoulder pain. The record reflects the doctor assessed that Keith suffered from "cervical myofascial spasms" and "*lumbar myofascial spasms*." As a result, the doctor prescribed "*aggressive physical therapy for myofascial release of the cervical and lumbar areas*[.]"

21

(Emphasis added). As stated, in light of this evidence, the circuit court found that Keith had wilfully and in bad faith misrepresented his prior medical history, thus favoring dismissal of his cause of action.

¶42. In *Eaton Corp.*, 133 So. 3d at 752 (¶60), the supreme court found "no abuse of discretion in the trial court's decision to impose [a] monetary sanction issued [as the result of serious pretrial discovery misconduct], despite the absence of a motion to compel." The *Eaton* court held that "gross indifference" or "willful negligence" of a discovery requirement are both are "'willful' violations and an abuse of the truth-seeking process." *Id*. at 748 (¶49). The supreme court further explained that:

> A willful violation of a discovery rule occurs when there is a conscious or intentional failure to comply with the rule's requirements. A finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations.

*Id*. (citing *Pierce*, 688 So. 2d at 1388).

¶43. In his brief to this Court, Keith admits that he "was wrong when he denied having ever complained of neck and lower back pain prior to the 2011 accident." As such, I find the evidence sufficient to support the circuit court's conclusion. *See Conklin v. Boyd Gaming Corp.*, 75 So. 3d 589, 595 (¶19) (Miss. Ct. App. 2011) (finding willfulness where plaintiff knew he had undergone prior treatment for injuries but chose not to admit such during discovery).

¶44. As to the second *Pierce* factor—whether Rule 37's deterrent value could be achieved through less drastic sanctions—the circuit court found dismissal was the only proper remedy. I agree, as "[t]he other sanctions considered by the [trial] court would not achieve the

deterrent value of the dismissal. . . . [A]ny other sanction beside dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty[.]" *Pierce*, 688 So. 2d at 1391.

¶45. Next, regarding the factor of prejudice, the circuit court found that Keith's false representations indeed prejudiced T. Mart, thus weighing in favor of dismissal. Keith, however, argues on appeal that because the misrepresentations were discovered prior to trial, no prejudice resulted. I disagree. First, "there is no requirement that the defendant be substantially prejudiced by the absence of evidence." *Id*. (holding substantial prejudice is a mere consideration of the court, not a requirement). Second, there is nothing in the record to illustrate that the circuit court erred in finding Keith's conduct prejudiced T. Mart during trial preparation. As such, I agree with the circuit court as to this factor.

¶46. Finally, the circuit court found that Keith's deceptive responses were in no way attributable to his attorneys, nor were the inquiries regarding his prior medical history confusing. To that point, Keith makes no argument on appeal as to confusion or misunderstanding—again, he merely asserts that he "forgot." As that argument is procedurally barred, I find the record-evidence supports the circuit court's finding as to this prong. *See Allen v. Nat'l R.R. Passenger Corp*., 934 So. 2d 1006, 1012 (¶16) (Miss. 2006). This issue is without merit.

¶47. In sum, I acknowledge that "[d]ismissal with prejudice is a sanction that should be imposed only in those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice." *Scoggins*, 743 So. 2d at 997 (¶36).

23

"Further, where a party has frustrated the orderly judicial process by false or erroneous responses to interrogatories, that party should not be able to argue that its own conduct has removed it beyond the reach of sanctions." *Avare*, 178 So. 3d at 801 (¶15). In order "to reverse the trial court's decision, this Court must have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id*. (quoting *Pierce*, 688 So. 2d at 1388).

¶48. The record reflects that the circuit court weighed the relevant *Pierce* factors and applied them to the evidence in the record. I can find no error warranting reversal. I thus find that the circuit court did not abuse its discretion when it held that any sanction less than dismissal would not adequately serve Rule 37's deterrent purpose. Accordingly, I would affirm the circuit court's judgment dismissing Keith's claim with prejudice. And because Lakeisha's loss-of-consortium claim is derivative of Keith's, I also would affirm the circuit court's judgment dismissing her claim with prejudice. *See J & J Timber Co. v. Broome*, 932 So. 2d 1, 6 (¶19) (Miss. 2006) ("Mississippi law dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own.").